IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

ERIE INSURANCE PROPERTY &
CASUALTY COMPANY,

               Plaintiff,

v.                                            CIVIL ACTION NO.   5:14-cv-15256

GC PERRY CONSTRUCTION GROUP,
INC., et al.,

               Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Erie Insurance Property & Casualty Company's Motion for Default Judgment and Summary Judgment* (Document 46),[1] the *Memorandum in Support* (Document 47), Defendants *Robert Kiblinger, Jr. and Jennifer Kiblinger's Response to Erie Insurance Property & Casualty Company's Motion for Default Judgment and Summary Judgment* (Document 49), and the *Reply Brief in Support of Erie Insurance Property & Casualty Company's Motion for Default Judgment and Summary Judgment* (Document 50), as well as all exhibits attached to the parties' pleadings.   For the reasons that follow, the Court finds that the Plaintiff's motion should be denied.

**FACTUAL AND PROCEDURAL HISTORY**

This case encompasses a convoluted factual and procedural history, discussed in some detail in the Court's *Memorandum Opinion and Order* (Document 12) permitting the Kiblingers to

---

1   While styled as a request for both default judgment and summary judgment, the Court addressed issues related to default in a *Memorandum Opinion and Order* (Document 55) entered on July 2, 2015.

intervene in this matter. For clarity and ease of reference, the Court provides the following summary.

*A. The Policy*

This case revolves around insurance coverage. Erie Insurance Property & Casualty Company, Inc. (Erie) issued a CGL insurance policy to GC Perry Construction Group, Inc. (GC Perry). Policy # Q26-6320039 requires notice of a lawsuit, and states[2] in relevant part:

> **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**
>
> \*\*\*
>
> **2. Duties in the Event of Occurrence, Offense, Claim or Suit**
>
> a. You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim. To the extent possible, notice should include:
>
> (1) How, when and where the 'occurrence' or offense took place;
>
> (2) The names and addresses of any injured persons and witnesses; and
>
> (3) The nature and location of any injury or damage arising out of the 'occurrence' or offense.
>
> b. If a claim is made or 'suit' is brought against any insured, you must:
>
> (1) Immediately record the specifics of the claim or 'suit' and the date received; and
>
> (2) Notify us as soon as practicable.
>
> You must see to it that we received written notice of the claim or 'suit' as soon as practicable.

---

2  The Court notes that Policy # Q26-6320039 "was in effect from February 13, 2007 through February 13, 2008," and "was subsequently renewed for additional consecutive policy periods from February 13, 2008 to February 13, 2009." (Document 47 at 5.)

2

    c. You and any other involved insured must:

    (1) Immediately send us copies of any demands, notices, summons or legal papers received in connection with the claim or 'suit':

    (2) Authorize us to obtain records and other information;

    (3) Cooperate with us in the investigation or settlement of the claim or defense against the 'suit'; and

    (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insured may also apply.

    d. No insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

(Document 47 at 5-6; Exhibit H at 8) (emphasis in original.)

  *B. State Court Action*

  On or about February 28, 2007, Robert and Jennifer Kiblinger (together, the Kiblingers) contracted with GC Perry to build a home at Glade Springs Resort in Daniels, West Virginia, for $968,312.00. (Document 1 at 2.) Various issues arose during construction, however, and the Kiblingers subsequently filed suit against GC Perry and Gregory C. Perry (Mr. Perry) in the Circuit Court of Raleigh County, West Virginia, on April 21, 2009. (*Id.*) The Kiblingers alleged breach of contract, fraud, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, concealment, conversion, contribution, indemnification, duress and extortion. (*Id.*) Mr. Perry retained counsel and subsequently filed for bankruptcy on June 30, 2009, less than four months after the Kiblingers filed suit, and GC

Perry subsequently dissolved. (Document 49 at 1-2.) Mr. Perry did not renew his contractor's license. (*Id.*)

### C. Federal Action

On April 23, 2014, Erie filed a *Complaint for Declaratory Relief* (Document 1) against GC Perry, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* Erie claims it did not receive notice of the 2009 lawsuit or the potential for a claim until sometime in late December 2013 or January 2014, when GC's "former legal counsel in the underlying civil action" sent Erie a letter.[3] (Document 47 at 3-4.) As a result, Erie alleges that GC Perry violated the terms of the insurance policy by failing to give notice of the purported occurrence(s) and state court lawsuit "as soon as practicable," and also cites GC Perry's failure to provide it with "copies of the summons and complaints . . .." (Document 1 at 5.) Erie seeks a declaration "that there is no coverage for the underlying civil action against Erie's insured under the policy" and asks "[t]hat Erie be awarded its attorney's fees and costs in prosecuting this action[,]" as well as "any and all further relief that this Court deems just and proper." (*Id.* at 6.) The Kiblingers assert that Erie was provided notice of the lawsuit and potential claim when a "statement of financial affairs" from GC's bankruptcy was sent to Erie. (Documents 49 at 3; *see also* Documents 49-2 and 49-4.)

### D. Procedural History

After Erie filed its complaint for declaratory relief, Defendant GC Perry "filed a *pro se* request/motion seeking, in addition to other relief, a ninety (90) day extension of time to answer Erie's complaint." (Document 12 at 2.) The Court granted the motion, in part, in a June 4, 2014 *Order* (Document 7), giving GC Perry an additional forty-five (45) days to retain counsel, but

---

3   The first mailing, dated December 17, 2013, "was apparently returned as undeliverable," and on December 27, 2013, "the same counsel re-sent the aforementioned correspondence . . .." (Document 47 at 4.) Erie concedes that as of January 3, 2014, it had notice of the claim. (*Id.*)

4

holding in abeyance certain other requests. (Document 7 at 1-2.) The Kiblingers, through counsel, then filed a *Motion for Intervention as of Right, or in the Alternative, for Permissive Intervention* (Document 8) and a *Memorandum in Support* (Document 9). Erie filed a response in opposition on June 16, 2014, and the Kiblingers filed their reply on June 23, 2014. On July 2, 2014, the Court entered an *Order* granting the Kiblingers' request and directing the clerk to add them as Defendants. (*See* Document 12 at 6.)

*Erie Insurance Property & Casualty Company's Motion to Strike Defendants' Initial Rule 26(a)(1) Disclosures* (Document 25)[4] was filed on December 3, 2014, and *Defendants' Robert Kiblinger, Jr. and Jennifer Kiblinger's Response in Opposition to Erie Insurance Property & Casualty Company's Motion to Strike Defendants' Initial Rule 26(a)(1) Disclosures* (Document 26) was filed on December 18, 2014. *Erie Insurance Property & Casualty Company's Reply in Support of Motion to Strike Defendants' Initial Rule 26(a)(1) Disclosures* (Document 29) was filed on December 29, 2014.

Thereafter, on February 26, 2015, the Kiblingers filed a *Motion to Have Matters Admitted, or in the Alternative to Determine Sufficiency of Answers and to Compel Further Responses* (Document 36).[5] On March 3, 2015, a *Protective Order* (Document 37) was proposed to the Court, and on March 6, 2015, the Court entered the order. (*See* Document 38). *Erie Insurance Property & Casualty Company's Response to the Kiblingers' Motion to Have Matters Admitted, or in the Alternative to Determine Sufficiency of Answers and to Compel Further Responses* (Document 39) was filed on March 11, 2015, and the Kiblingers' *Reply of Motion to Have Matters*

---

4   The Court notes that this motion was referred to Magistrate Judge VanDervort per the Court's *Standing Order* (Document 3).
5   This motion was also referred to Magistrate Judge VanDervort.

*Admitted, or in the Alternative to Determine Sufficiency of Answers and to Compel Further Responses* (Document 41) was filed on March 27, 2015.

*Robert Kiblinger, Jr. and Jennifer Kiblinger's Motion to Compel* (Document 42)[6] was filed on April 6, 2015, and *Erie Insurance Property & Casualty Company's Response to Robert Kiblinger, Jr. and Jennifer Kiblinger's Motion to Compel* (Document 48) was filed on April 23, 2015. To date, the Kiblingers have not filed a reply to Erie's response.

*Erie Insurance Property & Casualty Company's Motion for Default and Summary Judgment* and its *Memorandum in Support* were filed on April 20, 2015. Defendants *Robert Kiblinger, Jr. and Jennifer Kiblinger's Response* was submitted on May 4, 2015, and on May 11, 2015, Plaintiff filed its *Reply*. The matter is ripe for ruling.

## STANDARD OF REVIEW

*A. Summary Judgment*

The well-established standard for consideration of a motion for summary judgment is that summary judgment should be granted if the record, including the pleadings and other filings, discovery material, depositions, and affidavits, "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning

---

6 This motion, too, was referred to Magistrate Judge VanDervort.

6

a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013).

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the nonmoving party must satisfy its burden of showing a genuine factual dispute by offering more than "[m]ere speculation" or a "scintilla of evidence" in support of its position. *Anderson*, 477 U.S. at 252; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. On the other hand, if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

### B. Determination of Insurance Policy Coverage

The Supreme Court of Appeals of West Virginia has instructed that the "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." *Tennant v. Smallwood,* 568 S.E.2d 10, 14 (W.Va. 2002) (citation and quotation omitted). "[W]here the provisions of an insurance policy contract are clear and unambiguous they are not

7

subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." *Keffer v. Prudential Ins. Co.,* 172 S.E.2d 714, 715 (W.Va. 1970) (citations omitted).

On the other hand, if a policy's provisions are ambiguous they will be liberally construed in favor of the insured. *Aetna Cas. & Sur. Co. v. Pitrolo,* 342 S.E.2d 156, 160 (W.Va. 1986)(citations omitted)("since insurance policies are prepared solely by insurers, any ambiguities in the language of insurance policies must be construed liberally in favor of the insured.") However, "such construction should not be unreasonably applied to contravene the object and plain intent of the parties." Syl. Pt. 6, *Hamric v. Doe*, 499 S.E.2d 619 (W.Va. 1997) (quoting Syl. Pt. 2, *Marson Coal Co. v. Ins. Co. of State of Pennsylvania*, 210 S.E.2d 747 (W.Va. 1974)). A policy provision is ambiguous if it is "reasonably susceptible of two different meanings or . . . of *such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning*." *Glen Falls Inc. Co. v. Smith*, 617 S.E.2d 760, 768 (W.Va. 2005) (quoting Syl. Pt. 5, *Hamric*, 499 S.E.2d 619 (emphasis in original)).

"The satisfaction of the notice provision in an insurance policy is a condition precedent to coverage for the policyholder." *Colonial Ins. Co. v. Barnett*, 542 S.E.2d 869, 874 (W.Va. 2000). "However . . . the notice provision-also called a proof of loss provision-'is to be liberally construed in favor of the insured.'" *Id.* (quoting *Petrice v. Federal Kemper Ins. Co.*, 260 S.E.2d 276, 278 (W.Va. 1979)). The West Virginia Insurance Commissioner defines "notification of claim" as

> [a]ny notification, whether in writing or other means acceptable under the terms of an insurance policy or insurance contract, to an insurer or its agents, by a claimant, which reasonably apprises the insurer or agent of the existence of an occurrence which might give rise to liability under a policy or contract of insurance.

W. Va. CSR § 114-14-2.7. While "[i]t is possible for an insurance company to learn of the existence of a claim or a lawsuit by or against a policyholder from a third-party source other than the policyholder seeking coverage," 542 S.E.2d at 874, notice still must "result[] in the insurer being able to adequately investigate the claim and estimate its liabilities . . .." *Petrice*, 260 S.E.2d at 278.

"The phrase 'as soon as practicable' means a reasonable amount of time." *United Nat. Ins. Co. v. Lee*, 51 Fed.Appx. 407, 410 (4th Cir. 2002)(unpublished)(quoting *Ragland v. Nationwide Mut. Ins. Co.*, 120 S.E.2d 482 (W.Va. 1961)). The West Virginia Supreme Court has stated:

> In cases which involve liability claims against an insurer, several factors must be considered before the Court can determine if the delay in notifying the insurance company will bar the claim against the insurer. The length of the delay in notifying the insurer must be considered along with the reasonableness of the delay. If the delay appears reasonable in light of the insured's explanation, the burden shifts to the insurance company to show that the delay in notification prejudiced their investigation and defense of the claim. If the insurer can produce evidence of prejudice, then the insured will be held to the letter of the policy and the insured barred from making a claim against the insurance company. If however, the insurer cannot point to any prejudice caused by the delay in notification, then the claim is not barred by the insured's failure to notify.

*Dairyland v. Voshel*, 428 S.E.2d 542, 546 (W.Va. 1993). "Generally, the reasonableness of the delay is a question of fact." *Arch Specialty Ins. Co. v. Go-Mart, Inc.*, 2009 WL 5214916 (S.D.W. Va. 2009) (Copenhaver, J.)(unpublished)(internal citation omitted). "However, when the insured <u>offers no explanation</u>, the delay is considered unreasonable as a matter of law." *Medical Assurance of West Virginia, Inc. v. United States*, 233 Fed.Appx. 235, 237 (4th Cir. 2007) (emphasis added) (citing *Ragland*, 120 S.E.2d at 490-91).

9

## DISCUSSION

Erie argues summary judgment is appropriate because GC Perry did not provide it with reasonable notice of the Kiblingers' state court action until four and a half years after the filing of the complaint in Raleigh County. (Document 47 at 12-16.) It claims that "[b]ecause the delay of over four ½ years in providing notice of the claim was unreasonable, the condition precedent to coverage had not been met and there is no coverage for the claim as a matter of law." (*Id.* at 17.) While noting that "reasonableness of the delay" in notification "is generally a question of fact for the jury," Erie argues that other courts have found as a matter of law that a jury could not reasonably conclude that any valid reason(s) existed for the delay. (*Id.* at 16.)

The Kiblingers respond in opposition that "[t]he circumstances of this litigation are more complex than the average homeowner's litigation against his contractor," noting that Mr. Perry filed for bankruptcy protection and GC Perry was dissolved shortly after the state court complaint was filed. (Document 49 at 1.) Regarding summary judgment, the Kiblingers argue that the statement of financial affairs from Mr. Perry's bankruptcy sent to Erie provided notice of the state court lawsuit because it provided notification of "the style of the case, the causes of action against Mr. Perry, and the status of the case." (*Id.* at 2-3, 18.)

The Kiblingers argue that "even assuming the December 2013 [letter] notice applies here, Erie still cannot show prejudice," because "the initial pleading phase of the underlying action had not even been completed when the case was stayed." (*Id.* at 18-19.) Additionally, the Kiblingers stress that Erie provided representation for Mr. Perry in January 2014 and "[s]ince that time[,] Erie has been permitted to conduct an investigation of the claims in the underlying case...". (*Id.* at 19.)

10

They further argue that "[a]t the time this suit was filed, pursuant to the law in West Virginia and Erie's practices, there was no 'occurrence' of which to notify Erie," because "[t]he law provided that defective workmanship was not an 'occurrence' under a CGL policy . . .." (*Id.* at 17.) They point to the West Virginia Supreme Court's decision in *Cherrington v. Erie Insurance Property & Casualty Co.*, 745 S.E.2d 508 (2013), as changing the lay of the land with respect to CGL policies, and also stress that "at the time the *Cherrington* decision was published, Mr. Perry was no longer working as a general contractor, his business was dissolved, and he was unrepresented by counsel." (*Id.* at 5-7, 18.)

Erie replies that "[t]he Kiblingers argument that the bankruptcy filing constituted notice of a claim has no foundation in the facts or reason, and is certainly not within the confines of Insurance Commissioner's definition for 'notification of a claim' which requires that a claimant give notice that will 'reasonably apprise' the insurer . . .." (Document 50 at 2-3.) It likewise notes that the bankruptcy filing did not comply with the Policy requirements because there was no "transmittal to Erie of all 'notices, summonses, or legal papers received in connection with the claim . . .." (*Id.* at 3.) Erie argues that the four-plus-year delay is unreasonable under any circumstance, and "[t]he insured's 'belief' that 'faulty workmanship' type claims are generally not covered in the construction arena does not constitute a reasonable effort on the part of the insured to discover the existence of coverage under his Policy such that would justify a delay in notice[.]" (*Id.* at 5-6.)

Erie avers that it has suffered prejudice as a result of the delay in notification because "witness knowledge regarding facts and events were 4 ½ years stale," and thus, "Erie was denied the opportunity to investigate the underlying claim and estimate its insured['s] liability in close

11

proximity to time of the event giving rise to the claim." (*Id.* at 6.) It maintains that prejudice resulted because it was not afforded an opportunity to review the Answer from its insured and provide input, as well as the answers to the five-cross claims. Erie assigns great importance to the fact that the deposition of Mr. Perry was taken on April 4, 2012, or almost two years before it received notice of the claim. (*Id.* at 7.) Given the variety of claims in the state court action, Erie maintains that it is impossible for the Kiblingers to assume "what Erie 'would have done' had it been afforded the opportunity" to conduct a policy-coverage investigation. (*Id.* at 7-8.) Finally, Erie argues that the pending motion to compel and discovery-related dispute(s) are not enough to preclude summary judgment. (*Id.* at 8-9.)

The Court must first determine when notice was received by Erie. Although the Court finds that the statement of financial affairs did not provide Erie notice of the state court action, it nevertheless finds that the motion for summary judgment should be denied. In other words, the Court finds that, as a matter of law, the late-December 2013 letter from Mr. Perry's then-attorney that was received by Erie in early-January 2014 was the first time Erie was provided notice, as required by the Policy, of the state court complaint.

After reviewing the statement of financial affairs attached as Exhibit 2 to the Kiblingers' response in opposition, the Court concludes that the statement did not comply with the terms of the Policy for several reasons. This is true even when "viewing all of the factual evidence, and any reasonable inference to be drawn therefrom, in the light most favorable" to the Kiblingers as the non-moving party. Hoschar, 739 F.3d at 169. The statement of financial affairs did not: (i) specify the when, where, and how of the alleged occurrence, (ii) include the names and addresses of any injured persons and/or witnesses, nor (iii) include the subject of the lawsuit.

Moreover, the statement of financial affairs did not include copies of any demands, notices, summons or legal papers in connection with the state court action, and did not otherwise afford Erie notice sufficient to undertake an informed investigation and determination of coverage. Furthermore, the statement of financial affairs "notice" was not provided in a format that would have informed Erie of the need for any investigation as it appears related to Erie's status as a creditor of GC Perry, rather than its status as an insurer. No notice of the when, where and how was accomplished until Erie received the December 2013 letter from Mr. Perry's then-counsel.

Having determined that notice was received by Erie in December 2013, the next inquiry is whether the delay was reasonable. However, it is inappropriate for the Court to evaluate the reasonableness of the delay under the circumstances presented here. In deciding whether the delay will bar the insured's claim, one must consider the length of the delay in light of its reasonableness, which necessarily encompasses the explanation or reason given for it. Clearly, the insured has advanced *several* explanation(s) for the delay in Mr. Perry's affidavit. This matter is readily distinguishable from the facts and legal ruling found in *Medical Assurance of West Virginia, Inc.*, where the doctor gave no explanation for the delay in notification. Here, the determination of whether the delay was reasonable should be resolved only by a finder of fact since the issue could reasonably be resolved in favor of either party. Therefore, summary judgment is not appropriate.

## CONCLUSION

Wherefore, after careful consideration and for the reasons stated herein, the Court **ORDERS** that *Erie Insurance Property & Casualty Company's Motion for Default Judgment and Summary Judgment* (Document 46) be **DENIED**.

13

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

        ENTER:      July 7, 2015

*[Signature]*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA